Leodis C. Matthews, Esq. [SBN 109064]
LeodisMatthews@ZhongLun.com
Dick P. Sindicich, Esq. [SBN 78162]
DickSindicich@ZhongLun.com
Sara J. O'Connell, Esq. [SBN 238328]
sarajoconnell@zhonglun.com
ZHONG LUN LAW FIRM
4322 Wilshire Boulevard, Suite 200
Los Angeles, California 90010-3792
Tel. 323.930.5690 I Fax. 323.930.5693

*Counsel for Plaintiff, Micropoint Bioscience, Ltd. (HK)*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| **MICROPOINT BIOSCIENCE, LTD. (HK),**<br><br>Plaintiff,<br><br>v.<br><br>**NAN ZHANG a/k/a ZHANG NAN, an individual,**<br><br>Defendant. | **Case No.:  5:24-cv-01222**<br><br>**COMPLAINT AGAINST DEFENDANT NAN ZHANG FOR:**<br><br>**(1) BREACH OF FIDUCIARY DUTY, (2) CONSTRUCTIVE FRAUD, (3) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, (4) CONVERSION, (5) FRAUD BY CONCEALMENT, (6) RESTITUTION (UNJUST ENRICHMENT), AND (7) AN ACCOUNTING** |

As a result of Defendant Nan Zhang's unlawful and unauthorized conduct while acting as the CEO and director of Micropoint Bioscience, Inc. as herein alleged, Plaintiff Micropoint Bioscience, Ltd. (HK), in the capacity as its sole shareholder, is seeking compensatory damages against Defendant Nan Zhang in an amount not less than Six Million [$6,000,000.00] Dollars, for an award of exemplary damages, together with prejudgment interest, attorneys' fees, costs, and expenses.

**I.**

**NATURE OF THE ACTION**

With the prior consent of Micropoint Bioscience's newly appointed CEO and Director [hereinafter referred to as "MB-USA" or "the Company"] Plaintiff Micropoint Bioscience Ltd. (HK) brings this derivative action against Defendant Nan Zhang and, in support thereof, asserts the following claims: (1) Breach of Fiduciary Duty, (2) Constructive Fraud, (3) Breach of the Implied Covenant of Good Faith and Fair Dealing, (4) Conversion, (5) Fraud by Concealment, (6) Restitution (Unjust Enrichment), and (7) for an Accounting.

The gravamen of these claims rests upon the same set of predicate facts, all of which arose from the abuse of Defendant Nan Zhang's position as CEO and a Director of the Company. This position required Defendant Zhang to act in the best interests of the Company and its sole shareholder and prohibited the exploitation and usage of a position of trust and confidence to further Defendant Zhang's private interests over those of the Company. Simply stated, these claims against Defendant Nan Zhang are asserted solely due to conduct and acts to consciously and deliberately conflict with the interest of MBI and its Shareholder, and as a direct result thereof, both the Company and its sole shareholder suffered the harms herein alleged.

**II.**

**THE PARTIES**

**1.** Plaintiff Micropoint Bioscience, Ltd. (HK) [hereinafter referred to as ["MB-HK"] is and at all times herein mentioned a corporation duly formed and existing under the laws of Hong Kong with its principal place of business and business nerve center located at #1005, 10/f Prosperous Road, 48-52 Des Voeux Road, Hong Kong (SAR).

**2.** Defendant Nan Zhang, a/k/a Zhang Nan [hereinafter referred to as "ZHANG"] is an individual who at all times herein relevant was the CEO of MB-USA as well as a member of its Board of Directors.  ZHANG is a resident of the State of California and currently resides within the jurisdictional boundaries of this Court.

1

2 **III.**

3 **JURISDICTION AND VENUE**

4 **3.** This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1332 because the

5 damages claimed, exclusive of prejudgment interest, costs, and attorneys' fees, exceeds the

6 $75,000.00 threshold which is a condition precedent to bringing this diversity action before this

7 federal court.

8 **4.** Venue is proper within this Division of the Northern District of California under 28 U.S.C.

9 § 1391(b)(2), and Local Rule 3.2(e) because all of the events and omissions giving rise to these

10 claims occurred in the County of Santa Clara, California.

11 **5.** Divisional Assignment. Assignment to a Federal Court in the San Jose Division is proper

12 under Northern District of California, Civil Local Rules 3-2(c) because the Defendant's acts took

13 place in Santa Clara, California, and the San Jose Division of the Federal Court District covers this

14 geographic area.

15 **IV.**

16 **MB-HK HAS THE STANDING TO BRING THIS ACTION**

17 **6.** MB-HK has standing and the capacity to bring this derivative action on the ground that at

18 all times herein relevant it was the sole shareholder in MB-USA, a corporation duly formed under

19 the laws of the State of California. [1] *See* Cal. Corp. Code § 800(b)(1).

20 **7.** In or around early July 2023, at a time well before MB-HK is bringing these claims against

21 ZHANG, the Chairman and sole director of MB-USA authorized MB-HK to maintain the action

22 and the referenced claims. All of the ultimate facts of each cause of action against ZHANG were

23 obtained from MB-USA and/or its authorized agents, and a true copy of this complaint which MB-

24 HK is authorized to file has been electronically delivered and approved by MB-USA's Chairman.

25 *See* Cal. Corp. Code § 800(b)(2).

26 _____

27 [1]/ MB-USA is currently a dormant business entity but remains a validly formed corporation under
the laws of this State and was an active corporation when all of ZHANG's wrongful acts as herein

28 alleged took place.

**6.**    **a**.  Both before and during the times when ZHANG's misconduct as alleged herein occurred, MB-HK held 100% of the shares of MB-USA and was the funding entity that financed all of MB-USA's expenditures. Specifically, one of ZHANG's official responsibilities was to provide a budget and request for funds that would be deemed sufficient to cover both the operational costs and expenses of MB-USA's business ventures and to pay its employees' salaries and approved company benefit plans. Although ZHANG had discretionary authority over the funds earmarked solely for the "operational costs and expenses," the defendant was required to obtain approval for budgeted compensation and expenditure of funds earmarked solely for "salaries and benefit plans."

**V.**

**FACTS COMMON TO ALL CLAIMS**

**8.**  As the CEO and a Director of MB-USA, ZHANG was obliged to "peremptorily and exorable" treat the funds belonging to MB-USA entrusted for company operations, "with the utmost integrity, and in scrupulous observance of a specific trust, and not to only affirmatively protect the interests of corporation's assets committed to [defendant's] charge" but also to "refrain from doing anything that would work injury to the corporation . . . ." Cal. Corp. Code § 820; *see also Bancroft-Whitney v. Glen*, 64 Cal.2d 327, 435 (1966).  As a Director, ZHANG was also charged with the duty to "act in good faith" and "in a manner, such a director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinary prudent person in a like position would use under similar circumstances." *See* Cal. Corp. Code § 309.

**9.**  ZHANG served as the CEO and as a Director of MB-USA from March 18, 2005, the effective date of hire, until October 31, 2022, the effective date of termination.

**10.** On September 22, 2022, ZHANG was presented with a "Separation and Termination Agreement" which set forth all amounts due from the Company, including salary payments, [approved] total amount, and description of plan benefits, conditions of her separation and the terms of the total compensation to which ZHANG was entitled to receive from MB-USA.  A true copy of this Separation and Termination Agreement, which bears ZHANG's signature, is attached hereto

and marked for identification as "EXHIBIT ["EX"]'A'".

**11.** Thereafter, for operational reasons, it became necessary for MB-USA's new CEO and sole shareholder to cease Company operations in the United States.

**12.** In the course of winding down MB-USA's business affairs, MB-HK commissioned financial audits by accounting firms KPMG and Ernest & Young.  In the course of these audits, MB-HK learned for the first time that, in addition to receiving funds and benefits of the Company as approved bonuses, salary compensation, and funds contributed to a benefit plan provided by MB-USA while serving as its CEO, ZHANG had been discretely siphoning funds provided by MB-HK for the benefit of MB-USA into separate investment accounts wherein ZHANG was named as the sole trustee. Upon planning and departing from MBI, Zhang took over $6 Million from investment accounts that had been secretly maintained in the Company's name – all unbeknown to the Company and its shareholders.

**13.** More particularly, ZHANG had secretly and concealed such invested funds into:

        a.   A Non-Qualified Deferred Compensation Plan ["NQDCP"] and

        b.   A Defined Benefit Plan ["DBP"].

**14.** ZHANG, while serving in her capacity as MB-USA's CEO, caused the NQDCP to be formed and created on or about December 9, 2016, with an effective date of January 1, 2017.  As of April 1, 2022, the cash value of this NQDCP was $2,198,909.42. On or about April 5, 2022, after planning her departure from the Company, ZHANG caused $2,198,907.01 of these funds to be transferred to a bank account that was maintained under ZHANG's sole control, to which MB-USA did not have access. As of July 6, 2022, the remaining cash value of this NQDCP was only Two Dollars and Forty-one Cents [$2.41].

**15.** While serving as MB-USA's CEO, ZHANG also created the DBP, which was also funded with MB-USA's money, and which was also under her sole management and control. As of December 31, 2020, the value of ZHANG's secretive DBD was $3,971,561.86. At the time of her separation and termination on October 31, 2022, the cash value of this DBP was more than Four Million [$4,000,000.00] Dollars. None of these accounts or funds were disclosed to MBI Board of

its Shareholder.

**16.** ZHANG prepared the financial reports for MB-USA and manipulated these financial reports in a manner that obstructed and prevented the discovery of both the funding source of the NQDCO and DBP accounts and the existence of those accounts by MB-USA's Board of Directors and its sole Shareholder, MB-HK.

**17.** Upon her termination, ZHANG signed a "Separation and Termination Agreement" acknowledging that the only funds she was entitled to, and would receive from the Company were her salary, bonuses and ongoing separation payments, and from the MB-USA's authorized 401k. Unbeknown to MBI or its shareholders, ZHANG stole a significant portion of the funds from the NQDCP and DBP as a part of a departure from the Company.

**18.** Upon her termination, ZHANG signed a "Separation and Termination Agreement" acknowledging that the only funds she was entitled to receive and was to receive from the Company were her salary, bonuses, MB-USA's authorized 401k benefit plan, and the ongoing separate payments under their executed Separation and Severance package.

## VI.

### **FIRST CAUSE OF ACTION**

### **(MB-HK'S CLAIMS AGAINST ZHANG FOR BREACH OF FIDUCIARY DUTY)**

**19.** As and for its First Claim for Breach of Fiduciary Duty against ZHANG MB-HK realleges and incorporates by this reference paragraphs 1-16, inclusive, as if fully set forth herein.

**20.** As its CEO, ZHANG owed a Fiduciary Duty to MB-HK which required the defendant to act in the best interests of both MB-USA and its sole shareholder MB-HK, and prohibited defendant Zhang from using the position of trust and confidence to further the defendant's private interests to the detriment of the interests of the Company and its sole shareholder. This Fiduciary Duty further obligated Zhang to affirmatively protect the corporate assets MB-USA committed to her charge as well as *"refrain from doing anything that would work injury to* [MB-USA] . . . ." (italics added).

**21.** Before Zhang created and funded both the NQDCP and DBP, ZHANG intentionally and deliberately failed to obtain prior approval from MB-USA's Board of Directors and failed to obtain

prior approval from MB-USA's Board of Directors to open or maintain these investment accounts.

**22.** ZHANG was obligated to obtain the MB-USA's Board of Directors' approval as required under MB-USA's operating procedures.

**23.** ZHANG was also required to submit a "Funding Request" for the use of the Company's funds for deposit into the external investments in support of the NQDCP and DBP of which she was the sole trustee.

**24.** Even with the exercise of due diligence, neither MB-USA nor its sole shareholder, MB-HK, could have discovered ZHANG's secretive and deceitful activities in funding and concealing the NQDCP and DBP accounts at any time before March 2023 because:

    a. Until MB-HK received KPMG's Financial Report in March 2023, all of the financial information relating to MB-USA's business affairs provided to them was based upon financial information selectively approved and provided by ZHANG, and

    b. All of the financial information provided by ZHANG was configured to conceal that corporate funds had been diverted and funneled into the aforementioned secret and unauthorized NQDCP and DBP benefit investment accounts which ZHANG opened in the Company's name, but which were established, controlled, and used exclusively by the defendant as the sole trustee.

**25.** According to the express terms of the NQDCP, a person covered under the plan was only entitled to receive payout funds under a set of defined circumstances, none of which were applicable or consisted of circumstances applicable to ZHANG when the $2,198,907.01 referenced in paragraph 14 was transferred out of the NQDCP investment accounts on or about April 5, 2022.

**26.** At no time did ZHANG either disclose the existence of these investment accounts or that she had both placed company funds into those investment accounts and subsequently taken millions of dollars from those secret investment accounts.

**27.** The assets in the NQDCP and DBP accounts rightfully belonged to MB-USA and were for the benefit of its sole shareholder, MB-HK.

**28.** When Defendant Zhang executed the Separation and Termination Agreement on September

23, 2022, ZHANG agreed, promised, and warranted to MB-USA that she had returned, or would promptly return, to MB-USA "all property or data of the Company of any type whatsoever that has been in [the defendant's] possession or control" [Ex. A, Ref. Paragraph "4" thereof]. Despite these warranties and representations, and despite MB-USA and MB-HK's repeated requests that she do so, ZHANG failed and refused to provide any financial information relating to the NQDCP and DBP plans, or the existence of the millions of invested funds held in the investment accounts, of which Zhang was the sole trustee. As an example, MB-HK independently learned that the NQDC plan continued to accrue a return of profits on the invested funds that continued to be funded by the Company after the date ZHANG executed her resignation.

**29.**   As alleged herein, ZHANG, while acting in her capacity as MB-USA's CEO, breached fiduciary duties to both MB-USA and its sole Shareholder, MB-HK.

**30.**  As alleged herein, ZHANG, while acting in the capacity as a member of MB-USA's Board of Directors, also breached  fiduciary duties to both MB-USA and its sole Shareholder, MB-HK

**31.**  As a direct and proximate result of ZHANG's breach of fiduciary duties as herein alleged, both MB-USA and MB-HK have suffered damages in an amount not less than Six Million Dollars [$6,000,000.00], together with contractual prevailing party attorneys' fees, prejudgment interest, the costs and expenses incurred in prosecuting this action, and such additional amounts of damages according to proof.

WHEREFORE, MB-HK prays for judgment in its favor and against ZHANG as hereinafter set forth below.

**SECOND CAUSE OF ACTION**

**(MB-HK'S CLAIM AGAINST ZHANG FOR CONSTRUCTIVE FRAUD)**

**32.**  As and for its Second Claim for Constructive Fraud against ZHANG MB-HK realleges and incorporates by this reference paragraphs 1 through 31, inclusive, as if fully set forth herein.

**33.**  In or around early December 2016, ZHANG, while acting in the capacity as MB-USA's CEO, secretly established the two investment accounts as benefit plans referenced above in MB-USA's name and restricted access to those accounts to Zhang's total control as the sole trustee of

the accounts.  ZHANG thereby effectively denied MB-USA any access to information about the accounts, including that the accounts existed, or the funds diverted to those accounts.

**34.**  As ZHANG prepared and/or approved all of the financial and other related information for MB-USA's Chairman's or its Board's review, Zhang was able to manipulate the accounts in such a manner that her escheatment of the funds that rightfully belonged to MB-USA went completely unnoticed and undisclosed for years.

**35.**  More particularly, ZHANG's wrongful conduct as herein, and the extent thereof, was not unearthed and remained unsuspected until on or about March 2023, when MB-HK first received the financial audits prepared in connection with the winding down of MB-USA's business affairs. The March 2023 discovery was after the separation and termination of Zhang's employment on October 31, 2022.

**36.**  For over six years, while ZHANG was MB-USA's CEO, and charged with all of the fiduciary duties attendant to that position with the Company, not once did Zhang ever disclose the existence of the investment funds or its use for the unapproved investment and benefit plans either to the Board, Chairman of the Board, or its sole shareholder.

**37.**  It is patently axiomatic that any form of business entity is entitled to periodically receive pertinent and reliable information concerning its financial picture from the person charged with the duty and responsibility of providing it. Here, that person was ZHANG. And here, it is also ZHANG who breached the fiduciary duties owed to MB-USA and its sole shareholder, MB-HK, by an intentional and conscious failure to disclose an accurate expenditure of the funds they forwarded for the Company's business operations.

**38.**  As a direct and proximate result of ZHANG's unconscionable conduct as herein alleged both MB-USA and MB-HK have suffered damages in an amount not less than Six Million Dollars [$6,000,000.00], together with contractual reasonable attorneys' fees, prejudgment interest, the costs and expenses incurred in prosecuting this action, and such additional amounts of damages according to proof.

**39.**  In addition, since this cause of action for Constructive Fraud is predicated on ZHANG's

breach of the fiduciary duties owed to both MB-USA, and its sole shareholder, MB-HK is entitled to an award of exemplary damages in an amount within the bounds of constitutional due process yet still sufficient enough to punish ZHANG for her wrongful conduct that would serve as an example to others.

**40.** WHEREFORE, MB-HK prays for judgment in its favor and against ZHANG as hereinafter set forth below.

///

### THIRD CAUSE OF ACTION
### (MB-HK'S CLAIM AGAINST ZHANG FOR  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

**41.** As and for its Third Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing MB-HK sets forth and incorporates by the foregoing reference paragraphs 1 through 40, inclusive, as if fully set forth herein.

**42.** The Covenant of Good Faith and Fair dealing is implied in every form of a written agreement or contract and imposes on each party a duty that each party will do everything that needs to be done to accomplish its purpose, including the duty of fairness, openness, and honest-in-fact disclosures.

**43.** ZHANG entered into an employment agreement with MB-USA on March 15, 2015, to act as its CEO which created contractual obligations between her, MB-USA, its Chairman of its Board of Directors, and its sole Shareholder, MB-HK. In exchange for faithful performance of Zhang's duties and obligations as its CEO MB-USA agreed to provide compensation of $150,000.00 as a salary per year, plus eligibility to participate in the Company's approved IRA plan.

**44.** According to the express terms of this agreement ZHANG was to report directly to Pingyi Yan, MB-USA's Chairman of the Board.

**45.** According to MB-USA's Employee Handbook, as revised by ZHANG, herself, on March 30, 2014, MB-USA's employees were expected to follow MB-USA's rules of Conduct. This Handbook set forth some exemplars of what type acts conduct the Company constituted infractions and/or violations of its code of conduct, such as: (a) "Acts or attempted acts of dishonesty, including

the falsification of records, theft, or conversion of the property of the Company"; and (b) "Negligent or improper conduct leading to damage of employer-owned property."

**46.** Furthermore, under MB-USA's Bylaws, "The business and affairs of the Corporation shall be managed by, and all corporate powers shall be exercised by or under the Direction of the Board of Directors."

**47.** On September 23, 2022, ZHANG freely and knowingly executed a "Termination and Separation Agreement" with the Company which is governed by the State of California. Paragraph 4 thereof specifically states that ZHANG "hereby agrees[s] and warrants that [she] has returned or will promptly return if you have not, to the Company all property or data of the Company *of any type whatsoever* that has been in your possession or control {italics added}."

**48.** ZHANG, without first obtaining authorization from MB-USA's Chairman of the Board or complying with MB-USA's "Benefit Plan Approval Procedure," opened a DBP with Company funds which, as of October 30, 2022, was valued at over Four Million [$4,000,000] Dollars.

**49.** ZHANG, without first obtaining authorization from MB-USA's Chairman of the Board or complying with MB-USA's "Benefit Plan Approval Procedure," opened an NQDCP with Company Funds which, as of April 1, 2022, was valued at $2,198,909.42.

**50.** ZHANG failed to disclose opening and maintaining both of these unauthorized benefit plans that were funded with diverted Company monies.

**51.** ZHANG further failed to disclose she was the sole undisclosed trustee of both of these unauthorized investment accounts created and maintained as benefit plans.

**52.** Despite all of Zhang's agreements, promises, and warranties executed with MB-USA, and despite acknowledgment by Zhang of being in ongoing possession, custody, and control of the documents relating to the formation of the DBP and NQDCP, and the records of any financial transactions made in connection therewith, ZHANG remains steadfast in refusing to return this relevant information to MB-USA's Director even though rightfully and legally all such information belongs to the Company and its shareholder.

**53.** As alleged herein, ZHANG breached the Implied Covenant of Good Faith and Fair Dealing

by, among other things:

    a.  Failing to report to the Director of the Company as required by MB-USA as required by its Bylaws.

    b.  Failing to obtain the Director of the Company's approval and authorization before opening the undisclosed employee benefit plans.

    c.  Failing to follow the procedures necessary to open the referenced undisclosed employee benefit plans.

    d.  By diverting MB-USA's funds and assets into undisclosed investment accounts.

    e.  By committing acts of dishonesty; and

    f.  By failing to make fair, open, and honest-in-fact disclosures regarding the use of MB-USA's funds and assets.

**54.** As a direct and proximate result of breaches of the fiduciary duties by ZHANG owed to MB-USA, its Board of Directors, and its sole Shareholder, MB-HK has suffered damages according to proof not in an amount not less than Six Million [$6,000,000.00] Dollars, together with prejudgment interest, costs, and expenses, and for contractual attorney fees reasonably earned in prosecuting this action.

WHEREFORE, MB-HK prays for judgment in its favor and against ZHANG as set forth below.

**FOURTH CAUSE OF ACTION**

**(MB-HK'S CLAIM AGAINST ZHANG FOR CONVERSION)**

**55.** As and for its Third Cause of Action for Conversion against ZHANG, MB-HK realleges and incorporates by this reference the foregoing paragraphs 1 through 55, inclusive, as if fully set forth below.

**56.** MB-USA had an ownership interest in, and the right to possess, all of the funds that ZHANG wrongfully diverted and wrongfully deposited in the benefit investment accounts herein described because those funds were assets of MB-USA and MB-HK at all times herein relevant.

**57.** Without the prior knowledge, permission, or authority of MB-USA, Director ZHANG,

while acting in the capacity as the CEO of the Company, secretly opened the aforementioned benefit plan accounts and routinely funded these accounts with the monies wrongfully transferred from MB-USA's Bank of America Account to the benefit investment accounts and as its sole Trustee.

**58.** With particular reference to the NQDCP fund account, on or about April 1, 2022, ZHANG transferred $1,998,909.42 from MB-USA's Bank of America account to a Wells Fargo Bank account controlled by a sole trustee (ZHANG). Thereafter, on or about April 5, 2022, ZHANG withdrew $1,998,907.01 from the Wells Fargo account and deposited these funds in an unidentified bank account over which neither MB-USA nor MB-HK had or has any access or control.

**59.** These above transfers were made by ZHANG for her benefit and were wrongful acts.

**60.** ZHANG's actions as herein alleged constituted wrongful acts and fraudulent abscondment of financial assets that rightfully belonged to MB-USA and MB-HK and which ZHANG was not entitled to receive or possess, and which was concealed under a cloak as MB-USA's CEO.

**61.** As recently as August 31, 2023,  MB-USA and MB-HK asked ZHANG, both directly and through her appointed representative, for the return of funds withdrawn from the NQDCP investment account within ten [10] days.  At that time, MB-HK was informed and believed the funds to amount to not less than Two Million [$2,000,000] Dollars. MB-HK now believes this amount is not less than $2,198,907.01.

**62.** Despite this request, ZHANG failed and refused to return even the requested $2,198,907.01 and has not returned any amount whatsoever.

**63.** As a direct and proximate result of ZHANG's conversion of the NQDCP funds and depriving MB-USA and MB-HK of the benefit of those funds, MB-USA and MB-HK have sustained damages in an amount to be proven at trial but in an amount not less than $2,000,000.00, together with costs and expenses directly related to the recovery of said funds, together with prejudgment interest and such additional amounts as may be proven at trial.

WHEREFORE, MB-HK prays for judgment in its favor and against ZHANG as set forth below.

### FIFTH CAUSE OF ACTION

**(MB-HK'S CLAIM AGAINST ZHANG FOR FRAUD BY CONCEALMENT)**

**64.** As and for its Fifth Cause of Action for Fraud by Concealment against ZHANG, MB-HK realleges and incorporates by this reference paragraphs 1 through 16, 18 through 26, 29 through 33, and 37 through 48, inclusive, as if fully set forth herein.

**65.** Under the laws of the State of California there is a strong public interest in assuring that corporate officers and directors are faithful to their fiduciary obligations.

**66.** ZHANG was both an officer and director of MB-USA and after voluntarily assuming these roles was duty-bound to act with the utmost good faith for the benefit of MB-USA and could not take any undue advantage of opportunities conflicting with the interests of MB-USA and its sole Shareholder MB-HK without their consent.

**67.** Simply stated, ZHANG intentionally took unfair and unethical advantage of the positions of trust and confidence reposed upon her by MB-USA to *cook the books* to conceal and suppress the material fact she had been embezzling funds and assets that rightfully belonged to MB-USA and MB-HK, its sole shareholder, for years and in so doing ZHANG was defrauding both MB-USA and MB-HK for no other reason than to unjustly enrich herself at their expense.

**68.** Given the executive positions she held with the Company and the concomitant fiduciary duties and responsibilities that went part and parcel with the offices she held thereon, ZHANG was under an affirmative duty to provide a true and accurate accounting of MB-USA's financial picture to both its Chairman and its sole shareholder, MB-HK – which ZHANG intentionally failed to do. Although MB-USA and MB-HA first gained an inkling of the facts as herein alleged on or about September 16, 2022, they had no idea whatsoever of the actual depth of ZHANG's wrongful conduct while she was serving as an officer and director of the Company. Shortly thereafter, on September 19, 2022, MB-USA filed a Statement of Information with the California Secretary of State giving notice that ZHANG had been removed as both an officer and Director of the Company. Had the Company known of ZHANG's wrongful conduct, concealments, and suppression of material facts as herein alleged sooner, it would have taken these very same actions at that time.

**69.** Although the Company and MB-KK have been investigating the facts, circumstances, and

events that transpired while she was an Officer and Director of the Company since in or around mid-September 2022 they still do not know, with any degree of exactitude, the amount of damages they sustained as a direct and proximate result of ZHANG's wrongful conduct as herein alleged, and for no other reason than it is still being hampered by ZHANG's ongoing recalcitrant and unremorseful failure and refusal to return any of the Company's documents relevant to this investigation which have been in her possession and control during all times herein relevant

**70.**  Be that as it may, according to the information which <u>is</u> currently in MB-HK's possession, as a direct and proximate result of ZHANG's wrongful conduct as herein alleged the Company and its sole shareholder, MB-HK, have suffered and sustained actual damages of not less than Six Million [$6,000,000] Dollars together with prejudgment interest, expenses, as well as such other damages as may be proven.

**71.**  The fact of ZHANG's wrongful misappropriations of the Company, and its shareholder's assets were performed as intentional acts.  It is equally axiomatic that the significant duration of ZHANG's misappropriations of the Company and its shareholder's assets as alleged were incompatible with the rights for whom Zhang acted as a fiduciary and caused them considerable financial damage and harm.  Furthermore, given ZHANG acted outside the scope of her authority, and by the circumstances of her conduct as herein alleged has acted with intent to deprive both MB-USA and MB-HK of their assets and their legal rights to those assets, MB-HK is entitled to an award of exemplary damages, in amount sufficient to punish and serve as an example to others.

WHEREFORE, MB-HK prays for judgment in its favor and against ZHANG as set forth below.

## <u>SIXTH CAUSE OF ACTION</u>

**(MB-HK'S CLAIM AGAINST ZHANG FOR RESTITUTION (UNJUST ENRICHMENT))**

**72.**  As and for its Sixth Claim for Restitution (Unjust Enrichment) against ZHANG, MB-HK realleges and incorporates by the reference paragraphs 1 through 71, inclusive, as if fully set forth herein.

**73.**  As is fulsomely set forth and alleged herein, ZHANG abused her position of trust and confidence and breached the fiduciary duties owed to the Company and its sole shareholder by

willfully and covertly, and with full knowledge of the harm and wrongful acts would cause thereby, absconded with not less than $6,000,000 of the Company funds, and its shareholder's assets, for her use and benefit.

**74.** At all times herein relevant ZHANG knew and was consciously aware of the fact she did not have the right to either receive or possess these above-referenced assets without the prior express and knowledgeable consent of the Company.

**75.** At all times herein relevant ZHANG knew and was consciously aware of the fact she had not received the prior express and knowledgeable consent of the Company.

**76.** At all times herein relevant ZHANG consciously formulated and took all those steps she deemed necessary to ensure that neither the Company nor MB-HK could ever discover the nature and extent of her wrongful activities in the present time.

**77.** As a direct result of ZHANG's unlawful acts as herein alleged, and to avoid and award her unjust enrichment as a result thereof, MB-HK is entitled to the equitable remedy of "restitution" of these aforementioned funds, in an amount no less than Six Million Dollars [$6,000,000.00].

**78.** In addition to this equitable remedy of restitution, MB-HK is also entitled to prejudgment interest, the costs, and expenses incurred in recovering the funds absconded by ZHANG.

WHEREFORE, MB-HK is entitled to judgment in its favor and against ZHANG as set forth below.

## SEVENTH CAUSE OF ACTION

### (MK-HK'S CLAIM AGAINST ZHANG FOR AN ACCOUNTING)

**79.** As and for its Seventh Claim for an Accounting as against ZHANG, MB-HK realleges and incorporates by this reference paragraphs 1 through 16; paragraphs 29 through 33, and paragraphs 71 through 73, inclusive, as if fully set forth herein.

**80.** As alleged and fully established above ZHANG was in a fiduciary relationship with both MB-USA and MB-HK when her wrongful acts and the breaches of her fiduciary duties and responsibilities occurred.

**81.** As alleged herein, based on the information currently available to both MB-USA and MB-

HK, MB-HK claims that, as a direct result of her wrongful act of absconding with assets belonging to MB-USA, and its sole shareholder, ZHANG has been unjustly enriched in an amount *not less* than Six Million Dollars.

**82.**  However, due to ZHANG's unremitting and recalcitrant refusal to return any of the financial documents and other information relating to her wrongful acts as herein alleged, despite her written promise to do so, and even though ZHANG admitted having these documents, without this information the exact amount to which MB-HK is entitled to remain uncertain and cannot be accurately calculated without the information ZHANG possesses, refused, and continues to refuse to provide.

**83.**  Since the information necessary to determine the actual amount of restitution MB-HK is within the exclusive knowledge of ZHANG, MB-HK is entitled to the equitable relief of an Accounting.

WHEREFORE, MB-HK prays for judgment in its favor and against ZHANG as follows:

**VII.**
**PRAYER FOR RELIEF**

As and for Claims asserted herein, MB-HK seeks judgment in its favor and against ZHANG as follows:

1)  For its Claims for Breach of Fiduciary Duty [First], Constructive Fraud [Second], Breach of the Covenant of Good Faith and Fair Dealing [Third], Fraud by Concealment [Fifth], and Restitution (Unjust Enrichment) [Sixth], MK-HK seeks monetary damages in an amount not less than Six Million Dollars ($6,000,000.00), or according to proof; and

2)  As and for its Claims for Constructive Fraud [Second] and Fraud by Concealment [Fifth], in addition to monetary damages, MB-HK is seeking an award of exemplary damages in an amount in keeping with constitutional due process considerations but still sufficient to punish ZHANG and to serve as an example to others; and

3)  As for its Claim for Conversion [Second], MB-HK seeks Two million ($2,000,000.00) Dollars, as noticed in the aforementioned August 31, 2023 demand letter; and

4)   The equitable remedy of an Accounting [Seventh]; and

5)   An award of contractual, reasonable attorneys' fees; and

6)   For prejudgment interest on the amount of monetary award; and

7)   The costs and expenses incurred in connection with this litigation and prior attempts of collection of the funds wrongfully taken by ZHANG; and

8)   Such other and further relief as the Court may deem just and proper.

Dated: February 28, 2024

Respectfully submitted,

ZHONG LUN LAW FIRM LLP
Leodis C. Matthews
Dick P. Sindicich
Sara J. O'Connell
Counsel for Plaintiff
*Micropoint Bioscience LTD (HK)*

EXHIBIT A

**MICROPOINT**

September 22, 2022

Nan Zhang
3521 Leonard Court,
Santa Clara, CA 95054

Re: <u>Terms of Termination and Separation</u>

Dear Nan:

This letter agreement (this "Agreement") confirms the agreement between you and <u>Micropoint Bioscience, Inc.</u> ("the Company") concerning the termination of your employment or your separation from the Company and offers you the separation compensation set forth herein in exchange for your release of claims.

1.    <u>Separation Date</u>: October 31, 2022, shall be your last day of employment with the Company (the "Separation Date").

2.    <u>Acknowledgment of Payment of Wages:</u> By your signature below, you acknowledge that on October 31, 2022, we will provide you a final paycheck for all wages, salary, bonuses, reimbursable expenses, accrued vacation and any similar payments due you from the Company as of the Separation Date. <u>The amount total $ 33,880.10 including base salary of $28,544.55; accrued vacation pay of $4347.55; 401K matching of $988.</u> By signing below, you acknowledge that the Company does not owe you any other amounts provided this payment, and your wages through the Separation Date, is made on the Separation Date (10/31/2022).

3.    <u>Separation Compensation</u>: In exchange for your agreement to execute, and not revoke, the waiver of claims set forth in paragraph 6 below, the Company, or its designee, agrees to provide you with the following compensation package after 30 days of your execution and no revocation of this Agreement:

   (a) Pay you a total of <u>$570,890.97,</u> which amount constitutes <u>20 months</u> of base salary. You will be paid <u>$28,544.55</u> monthly, on the last day of each month, for twenty (20) consecutive months and commencing on November 30, 2022.
   (b) Pay any monthly premium payments for you to continue your existing health insurance full coverage that include but might not limited to medical insurance with HSA contributions, dental and vision insurance (all at the same level or better coverage) until June 3, 2028.

4.    <u>Return of Company Property:</u> You hereby agree, promise, and warrant to the Company that you have returned, or will promptly return if you have not, to the Company all property or data of the Company of any type whatsoever that has been in your possession or control.

5.    <u>Confidential Information:</u> You hereby acknowledge that you are bound by all the agreements, including but not limited to the Confidentiality Agreement or any other agreement containing confidentiality provisions (as applicable, the "Confidentiality Agreement") you have signed



www.micropointbio.com                                    3521 Leonard Court
                                                        Santa Clara, CA 95054

MICROPOINT

during your employment.  A copy of all such any such agreements are attached hereto as Exhibits A  if there is any. As a result of your employment with the Company you have had access to the Company's Confidential Information (as defined in the Confidentiality Agreement), and you agree that you will hold all Confidential Information in strictest confidence and that you will not make use of such Confidential Information on behalf of anyone. You further confirm that you have delivered to the Company all documents and data of any nature containing or pertaining to such Confidential Information and that you have not taken with you any such documents or data or any reproduction thereof.

6.    Waiver of Claims:  The payments and promises set forth in this Agreement are in full satisfaction of all accrued salary, vacation pay, bonus pay, profit-sharing,  termination benefits or other compensation (other than equity and stock option) to which you may be entitled by virtue of your employment with the Company or your separation from the Company. Provided you are paid the full amounts set forth in Section 3 above, you hereby release and waive any other claims you may have against the Company and its owners, agents, officers, shareholders, employees, directors, attorneys, subscribers, subsidiaries, affiliates, successors and assigns (collectively "Releasees"), whether known or not known, including, without limitation, claims under any employment laws, including, but not limited to, claims of unlawful discharge, breach of contract, breach of the covenant of good faith and fair dealing, fraud, violation of public policy, defamation, physical injury, emotional distress, claims for additional compensation or benefits arising out of your employment or your separation of employment, claims under Title VII of the 1964 Civil Rights Act, as amended, the California Fair Employment and Housing Act and any other laws and/or regulations relating to employment or employment discrimination, including, without limitation, claims based on age or under the Age Discrimination in Employment Act or Older Workers Benefit Protection Act.  By signing below, you expressly waive any benefits of Section 1542 of the Civil Code of the State of California, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Notwithstanding the foregoing, this waiver and release of claims does not extend to any rights which as a matter of law cannot be waived and released.

7.    Nondisparagement:  You agree that you will not disparage Releasees or their products, services, agents, representatives, directors, officers, shareholders, attorneys, employees, vendors, affiliates, successors or assigns, or any person acting by, through, under or in concert with any of them, with any written or oral statement.

8.    Legal and Equitable Remedies:  You agree that Releasees have the right to enforce this Agreement and any of its provisions by injunction, specific performance, or other equitable relief without prejudice to any other rights or remedies Releasees may have at law or in equity for breach of this Agreement.

9.    Attorneys' Fees:  If any action is brought to enforce the terms of this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees, costs, and expenses from the other party, in addition to any other relief to which the prevailing party may be entitled.

www.micropointbio.com

3521 Leonard Court
Santa Clara, CA 95054



10.    <u>Venue and Governing Law</u>:  The parties agree that this Agreement will be governed by California law.  All parties agree that any disputes related to this Agreement, or your employment will be heard in a state or federal court located in Northern California.  All parties consent to the exclusive jurisdiction of those courts and agree not to suggest that litigation can, or should, proceed elsewhere. The parties consent to the entry of judgment (including a default judgment) in a state or federal court in Northern California and agree any such judgment may be entered and enforced anywhere in the world.

11.    <u>Confidentiality</u>:  The contents, terms and conditions of this Agreement must be kept confidential by you and may not be disclosed except to your accountant or attorneys or pursuant to subpoena or court order. You agree that if you are asked for information concerning this Agreement, you will state only that you and the Company reached an amicable resolution of any disputes concerning your separation from the Company. Any breach of this confidentiality provision shall be deemed a material breach of this Agreement.

12.    <u>No Admission of Liability</u>:  This Agreement is not and shall not be construed or contended by you to be an admission or evidence of any wrongdoing or liability on the part of Releasees, their representatives, heirs, executors, attorneys, agents, partners, officers, shareholders, directors, employees, subsidiaries, affiliates, divisions, successors or assigns. This Agreement shall be afforded the maximum protection allowable under California Evidence Code Section 1152 and/or any other state or Federal provisions of similar effect.

13.    <u>Entire Agreement</u>:  This Agreement constitutes the entire agreement between you and Releasees with respect to the subject matter hereof and supersedes all prior negotiations and agreements, whether written or oral, relating to such subject matter other than the Confidentiality Agreement referred to in paragraph 5, above.  You acknowledge that neither Releasees nor their agents or attorneys have made any promise, representation, or warranty whatsoever, either express or implied, written, or oral, which is not contained in this Agreement for the purpose of inducing you to execute the Agreement, and you acknowledge that you have executed this Agreement in reliance only upon such promises, representations, and warranties as are contained herein.

14.    <u>Modification</u>:  It is expressly agreed that this Agreement may not be altered, amended, modified, or otherwise changed in any respect except by another written agreement that specifically refers to this Agreement, executed by authorized representatives of each of the parties to this Agreement.

15.    <u>Review of Separation Agreement</u>: You understand that you may take up to forty-five (45) days to consider this Agreement and, by signing below, affirm that you were advised to consult with an attorney prior to signing this Agreement. You also understand you may revoke this Agreement within thirty (30) days of signing this Agreement.

3521 Leonard Court
Santa Clara, CA 95054



If you agree to abide by the terms outlined in this Agreement, please sign below and return it to me.  I wish you the best in your future endeavors.

Sincerely,

Micropoint Bioscience, Inc.

By: _____

Pingyi Yan, CEO

Place: 3521 Leonard Court, Santa Clara, CA 95054

Micropoint Technologies Co. Ltd [located at "5F, Building 1, No 2 Liuxian Road, Baoan District, 518101 Shenzhen, China")

By: _____

Pingyi Yan, Chairman and General Manager

Place: 3521 Leonard Court, Santa Clara, CA 95054

[Only with respect to Paragraphs 9 and 10]

READ, UNDERSTOOD AND AGREED:

Signature: _____   Date: _9/23/2022_____

Nan Zhang

Place: 3521 Leonard Court Santa Clara, CA 95054